UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael Shane Campbell,

    Plaintiff,

    v.                                      Case No. 1:07cv841

CSX Transportation, Inc.,               Judge Michael R. Barrett

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon the Motion for Summary Judgment filed by Defendant CSX Transportation, Inc. ("CSX") (Doc. 25); Plaintiff Michael Shane Campbell's Memorandum in Opposition (Doc. 28); CSX's Supplemental Motion for Summary Judgment; (Doc. 39); Campbell's Memoranda in Opposition (Docs. 42, 43); and CSX's Reply (Doc. 48).

**I.    BACKGROUND**

This is a negligence action where Plaintiff claims to have been injured on the job in violation of 45 U.S.C. § 51 *et seq.*, the Federal Employers' Liability Act ("FELA"), and in violation of 49 U.S.C. § 20701, the Locomotive Inspection Act ("LIA"). (Doc. 1, ¶¶ 2, 4, pp. 2-4). Campbell filed his Complaint on October 9, 2007. (Id.)

Campbell began working for CSX in 2000. (Doc. 41, Ex. D; Michael Campbell Dep., Doc. 26, p. 6). In 2003, Campbell began working the as a remote control operator. (Campbell Dep., p. 24; Doc. 1, ¶ 2). This job involved moving cars and locomotives around the rail yard via a remote control device. Campbell used a remote control unit that was

clipped to a vest. (Doc. 28, p. 3; Doc. 25, p. 3). This unit was a box approximately seven inches long, four and a half inches wide, five inches in height, and weighing approximately seven pounds. (Doc. 28, p. 3; Doc. 25, p. 3). This device and the vest are referred to as "the harness" or "the vest." (James Woody Dep., Doc. 44, p. 24.) An alternative to the harness was a belt-type device that secured the remote control unit to a belt that went around the waist. (Doc. 28, p. 3).

Campbell experienced lower back pain from working with the harness after the very first day he used it, which was sometime in 2003. (Campbell Dep., pp. 24, 41-42). Campbell described the pain as a "minor irritation." (Id., p. 48) Campbell stated that this was a typical complaint from employees who worked with the harness. (Id., p. 45). Despite the pain in his lower back, Campbell continued to use the harness for "around a year or so" before he saw a doctor. (Id., p. 48, 55-56). However, "a couple days," or "a couple of weeks," before October 12, 2004, Campbell began having pain higher up his back and was having problems with his left arm. (Id., pp. 50-51, 94). Campbell noted that the left side of his back was protruding out an inch-and-a-half to two inches beyond the right side. (Id., p. 51). Compared to his previous lower back pain, Campbell stated that "something had changed." (Id.)

This change prompted Campbell to call his family doctor, Robert L. Baker, M.D. on October 10, 2004. (Id., pp. 49, 51-53). Campbell saw Dr. Baker on October 12, 2004. (Id.) Dr. Baker noted that Campbell had a "subacute mild complaint" of back pain for eighteen months that was "temporally related to work belt over shoulder at work."[1] (Robert

---

[1] Dr. Baker later explained in his deposition that this statement refers to the harness. (Baker Dep., pp. 20-24).

Baker Dep., Doc. 26, p. 21). Dr. Baker found that Campbell had suffered a subacute lumbrosacral strain. (Baker Dep., p. 24). Dr. Baker prescribed medication, physical therapy, and gave Campbell a note directing that Campbell be allowed to wear the belt while working, instead of the harness. (Baker Dep., p. 25). Using the belt was Campbell's suggestion, and Dr. Baker agreed that it was worth trying. (Campbell Dep., pp. 56, 62; Baker Dep., p. 25-26). Campbell claims that he asked to use the belt previously, but was told that the company would not issue anyone a belt unless they had a medical issue. (Campbell Dep., p. 57-58).

When he returned to work the next day, Campbell gave Dr. Baker's note to his supervisor, James Woody. (Id., p. 55). Woody informed Campbell that the note would be faxed to a CSX office in Jacksonville, but he was to go back to work using the harness because the belt was unavailable. (Campbell Dep., pp. 62-63; Doc. 49, Ex. A). Campbell spoke with several people over the next two days, but he never received a response about his request to use the belt. (Campbell Dep., p. 63; Doc. 49, Ex. A). On October 15, 2004, Campbell worked a half-day "until [the] pain became so bad, my knees buckled and my hand went numb." (Doc. 49, Ex. A). Campbell was told to go home and to see his doctor again. (Id.) Campbell did not return to work for approximately six months due to his back problems. (Campbell Dep., p. 64). After seeing various doctors and going through various types of treatments, Campbell is relatively pain free and only complains of ordinary age-related back pains. (Id., p. 67-81).

According to Woody, the belt was to be used only when medically necessary. (Woody Dep., p. 29). This opinion is contradicted by other higher-up CSX employees, who state that it was not CSX policy to require a medical excuse to use the belt. (Bradley Dep.,

Doc. 45, p. 18; Morton Dep., Doc. 46, pp. 14-15; Brown Dep., Doc. 47, p. 28). Instead, employees could request the belt based on their preference, and the belt could be ordered straight from the manufacturer by local supervisors. (Bradley Dep., p. 15, 19; Morton Dep., p. 14; Brown Dep., p. 27).

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

### B. FELA - Statute of Limitations

FELA provides a federal cause of action against a railroad by any employee injured or killed as a result of the railroad's negligence. *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 588 (6th Cir. 2001). FELA actions are limited by a three-year statute of limitations. 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."). A FELA action generally

accrues, "'when there has been a violation of legally protected interests,' or, 'when the tortious event is committed.'" *Id.*, *quoting Hicks v. Hines Inc.*, 826 F.2d 1543, 1544 (6th Cir. 1987). However, "some injuries and causes are so latent as to elude discovery at the time of the injury-causing event." *Id*. In such instances, courts apply the time-of-event rule, or the discovery rule. *Id*.

Under the time-of-event rule "'if greater than de minimus harm is discernable at the time of the tortious event'" then the action accrues at the "the moment a tortious act occurs." *Id*. The time-of-event rule applies when a traumatic event results in a noticeable injury. *Id.*, *citing Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 231 (5th Cir. 1984). Because Campbell's back injury developed over time, the time-of-event rule does not apply.

Under the discovery rule, the statute of limitations begins to run, "when 'the plaintiff reasonably should have discovered both cause and injury.'" *Id.*, *quoting Hicks*, 826 F.2d at 1544. In other words, the injury itself, and the cause of that injury, should both be reasonably known. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). The discovery rule, therefore, applies "when no significant injury is discernable at the time of the tortious event, or if the cause of an injury is not apparent." *Fonseca*, 246 F.3d at 588.

However, the Sixth Circuit distinguishes "between the aggravation of a time-barred injury and a claim that is distinct from previous injuries." *Fonseca*, 246 F.3d at 589, *citing Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 776 (6th Cir. 2001); *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 815 (6th Cir. 1996), *overruled on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000). If an employee's

current injury is simply an aggravation of an earlier injury, which itself is time-barred, then the current claim is time-barred as well. *Id*. However, if the later injury is a separate injury, then it is not time-barred. *Id*.

CSX argues that Campbell admitted to having back pain immediately after he began using the harness. CSX also points out the Campbell reported to Dr. Baker on October 12, 2004 that he had been experiencing back pain for eighteen months. However, Campbell claims that the injury he saw Dr. Baker for on October 12, 2004 was a separate and new injury. Campbell states that his pain was more severe, and originated from a different place on his back. Campbell argues that he first knew of his injury when he was diagnosed by Dr. Baker on October 12, 2004. The Court finds that in viewing the evidence in a light most favorable to Campbell, there is a genuine issue of material fact as to when Campbell knew or should have reasonably known about his injury and its cause. While Campbell suffered from back pain and had requested to use the belt before October of 2004, Campbell has testified that the pain he sought treatment for on October 12, 2004 was different. Based on a accrual date of October 12, 2004, Campbell's Complaint, filed on October 9, 2007, is not barred by FELA's statute of limitations. Therefore, CSX's motion is DENIED on this basis.

### C.     **FELA - Liability**

FELA provides that:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. Under FELA, a plaintiff must "'prove the traditional common law elements of negligence; duty, breach, foreseeability, and causation.'" *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007) (*citing Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990)). However, while FELA parallels common law negligence, it is to be "liberally construed." *Fonseca*, 246 F.3d at 588, *citing Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994).

### a. *Duty*

"Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace; this does not mean that a railroad has the duty to eliminate all workplace dangers, but only the 'duty of exercising reasonable care to that end.'" *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007), *citing Baltimore & Ohio S. W. R. Co. v. Carroll,* 280 U.S. 491, 496 (1930). CSX does not dispute that it had such a duty towards Campbell.

### b. *Breach and foreseeability*

"A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." *Van Gorder*, 509 F.3d at 269, *citing Tiller v. Atl. Coast Line R. Co.*, 318 U.S. 54, 67 (1943). "'The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur . . . ." *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985), *citing Miller v. Cincinnati, New Orleans & Texas*

*Pac. Ry. Co.,* 203 F. Supp. 107, 113 (E.D. Tenn. 1962), *aff'd*, 317 F.2d 693 (6th Cir. 1963). Stated differently, a railroad breaches its duty when it " 'knew, or by the exercise of due care should have known' that prevalent standards of conduct were inadequate to protect [the plaintiff] and similarly situated employees." *Van Gorder*, 509 F.3d at 269-270, *quoting Aparicio*, 84 F.3d at 811.

CSX argues that no witness has testified that Campbell's work with the harness breached its standard of care. However, the record shows that CSX failed to provide Campbell with an alternative to the harness in contravention of its own policy. There is also evidence in the record that back pain was a typical complaint from other employees who worked with the harness. Therefore, it possible for a reasonable jury to conclude that CSX breached its duty and should have foreseen Campbell's injury.

    c.    ***Causation***

A relaxed standard of causation applies under FELA. *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957). "The test for causation in FELA cases is whether an employer's actions played any part at all in causing the injury." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 259 (6th Cir. 2001). However, FELA it is not a workers' compensation statute. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). The Supreme Court has insisted that "FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" *Id.*, *quoting Ellis v. Union Pac. R. Co.*, 329 U.S. 649, 653 (1947).

CSX argues that there is no reliable cause-and-effect opinion that Campbell's use of the harness caused his injuries. CSX argues that the only medical evidence comes from Campbell's treating physician Dr. Baker, who has not been certified as an expert

under Fed. R. Evid. 702.

Under FELA, "[a] jury question certainly can be created even without expert testimony going directly to the question of specific causation." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 268 (6th Cir. 2001). Dr. Baker, as a non-expert, may testify about the treatments he prescribed to Campbell and his opinions regarding normal treatment. *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869-870 (6th Cir. 2007); *Hardyman*, 243 F.3d at 268. The testimony of a treating physician may not require the filing of a Fed. R. Civ. P. Rule 26(a)(2)(B) expert witness report because "doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of 'treating' a patient." *Fielden*, 482 F.3d at 870.

Dr. Baker attributed Campbell's injury to the harness. The Court cannot discount Dr. Baker's opinion on this point merely because it was based on information provided to him by Campbell. The record shows that Dr. Baker wrote a note directing that Campbell be permitted to use the belt instead of the harness. Dr. Baker's opinion creates a genuine issue of material fact for the jury to decide. If Dr. Baker's testimony is unreliable, that is a question for the jury, not one for the Court to decide on summary judgment.

In addition, Campbell testified that he had pain which he attributed to using the harness. Campbell explained that back pain was a typical complaint from other employees who worked with the harness. On October 15, 2004, when Campbell had to leave work early because of his the pain, he had been using the harness all day. This evidence could lead a reasonable jury to conclude that the harness was the cause of Campbell's injury.

Therefore, CSX's motion for summary judgment on Campbell's FELA claim is DENIED.

### D. LIA

To supplement FELA and to "facilitat[e] employee recovery," Congress enacted the Locomotive Inspection Act ("LIA"). *Urie v. Thompson*, 337 U.S. 163, 191 (1949). LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. To establish an LIA violation, Campbell must show that CSX "(1) failed to comply with regulations issued by the Federal Railroad Administration; or (2) violated the broad duty imposed 'on carriers to keep all parts and appurtenances of their locomotives in proper condition and safe to operate without unnecessary peril to life or limb.'" *Reed v. Norfolk S. Ry. Co.*, 312 F. Supp. 2d 924, 927 (N.D. Ohio 2004), *citing Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir. 1987).

The Court notes that Campbell has not responded to the arguments made by CSX in its Motion for Summary Judgment. Therefore, the Court finds that Campbell has abandoned this claim. *See Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, *3 (6th Cir. Apr. 27, 2006) (unpublished) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at 4 (6th Cir. Mar. 6, 2003) (finding

that, "Because Plaintiffs failed to brief the issue before the district court ... Plaintiffs abandoned their ... claim."); *see also Anglers of the Au Sable v. U.S. Forest Serv.,* 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment."). Therefore summary judgment is GRANTED as to Campbell's LIA claim.

## III. CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendant CSX's Motion for Summary Judgment (Doc. 25) is **DENIED in PART and GRANTED in PART**. Defendant's Motion is GRANTED as to Plaintiff's claim under LIA, but DENIED as to Plaintiff's claim under FELA.

**IT IS SO ORDERED.**

          */s/ Michael R. Barrett*
          Michael R. Barrett, Judge
          United States District Court